## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **IN RE THE MATTER OF:** ) | |
| ) | |
| **MICHAEL OUTLEY,** ) | |
| ) | |
|           **Plaintiff,** ) | **17 CV _____** |
| ) | |
| ) | **Hon.** |
| **vs.** ) | |
| ) | |
| **THE CITY OF CHICAGO, ALAN STARK, as Deputy** ) | |
| **Commissioner of the Department of Water and in his** ) | |
| **Individual and Official Capacity, RANDY CONNER,** ) | |
| **Commissioner Department of Water in his Individual** ) | |
| **and Official Capacities, and ROBERT MUSSEN, Chief** ) | |
| **Operating Engineer in her Individual and Official** ) | |
| **Capacity,** ) | |
| ) | |
|           **Defendants.** ) | |

## COMPLAINT

Plaintiff, MICHEAL OUTLEY, by and through his attorneys, Calvita J. Frederick of Calvita J. Fredrick & Associates, hereby submits his Complaint against Defendants, CITY OF CHICAGO, ALAN STARK, as Deputy Commissioner of the Department of Water, in his RANDY CONNER as Commissioner of the Department of Water, and ROBERT MUSSEN, as Chief Operating Engineer of the Department of Water, and sued in his individual capacity, and in support of his complaint against Defendants, states as follows:

## NATURE OF THE ACTION

1.    This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1981 and 42 U.S.C. § 1983 which prohibits discrimination on the basis of race and further prohibits retaliation for opposing or making

charges regarding discrimination, and to redress violations of Plaintiffs' Equal Protection rights guaranteed under the Fourteenth Amendment of the United States Constitution..

2.     Defendants engaged in deliberate and unlawful policies, patterns, and employment practices intended to and did create and proliferate a hostile and abusive work environment based on race that included violence, intimidation, retaliation, and constructive discharge.

3.     This lawsuit also arises under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. ("FLSA") for unpaid wages, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or such other and further relief that this Court may deem proper.

4.     Defendants have willfully violated the FLSA by intentionally refusing to fill open positions in the Water Department as and then failing to pay Plaintiff wages commensurate to the work he performed that was above his classification or in addition to his job classification or both, in violation of the FLSA, and all intended to and did create an abuse and hostile work environment.

5.     Defendants have engaged in the age discriminatory acts including the failure to promote Plaintiff in favor of promoting younger employees with less experience and seniority over the Plaintiff in willful violation of  the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

## JURISDICTION AND VENUE

6.     This suit alleges violations of 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 42 U.S.C. § 1981 and 42 U.S.C. § 1983. This Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

7.     The employment practices herein alleged to be unlawful were committed within the Northern District of Illinois. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 as MICHAEL'S residence, and Defendants' residence and business, as well as all events giving rise to this claim occurred within the counties served by this Court. Venue in this court is proper pursuant to 42 U.S.C.  §2000e- 5(f)(3).

8.    The jurisdiction of this Court is also invoked pursuant to 29 U.S.C. § 216(b), which confers original jurisdiction upon this Court in a civil action arising under the FLSA.

## **PARTIES**

9.    At all relevant times, Plaintiff Michael Outley is or was:

 a.   An African American man,

 b.    A resident of Illinois within the jurisdiction of this court,

 c.   A protected individual as defined by Title VII of the Civil Rights Act of 1 964 from discrimination because of race and retaliation because of opposing or making charges regarding discrimination, pursuant to 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a),

 d.   A former employee of the City of Chicago within the meaning of FLSA 29 U.S.C. § 203(e)(2)(C);

 e.   Currently 62 years of age; and

 f.   Qualified for his job and performed his work in an exemplary manner.

10.    At all relevant times, Defendant City of Chicago was and is an "employer" engaged in commerce within the meaning of Title VI I of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(b), (g) and (h).

11.    At all relevant times, Defendant City of Chicago has employed more than 500 employees.

12.    Defendant City of Chicago is a local municipality within the geographic boundaries of this Court and is authorized, by and through its agents, to act and is acting under and pursuant to Illinois law at all times material herein.

13.    Defendants Alan Stark, Randy Conner and Robert Mussen are citizens of the State of Illinois and reside in the County of Cook and in the geographic boundaries of this Court.

14.     At all relevant times, Plaintiff was employed by Defendant City of Chicago, and was an "employee" of Defendant City of Chicago within in the meaning of 42 U.S.C. § 2000e(f).

15.     On or about July 31, 2017, Plaintiff was constructively terminated from his position as an Assistant Chief Operating Engineer with the Defendant City of Chicago, within the Department of Water.

## ALLEGATIONS APPLI CABLE TO ALL COUNTS

16.     The Department of Water ("Department") of the City of Chicago has approximately 11 pumping stations and 2 filtration plants.

17.     The Department along with the Department officials: Alan Stark, in his official and individual capacity, Randy Conner in his official and individual capacity, and Robert Mussen, in his official and individual capacity; and others in the Department maintain written or unwritten policies and/or practices that create, sustain, and proliferate a hostile and abusive work environment for Plaintiff based on race especially within the Lexington pumping station.

18.     This hostile and abusive work environment is perpetuated, sustained, and created by deliberate acts allowed, sanctioned, and encouraged by Defendants.

19.     Each of the following deliberate acts occurred against Plaintiff and weave a tapestry of hostility that dominated every aspect of Plaintiff's existence while employed in the Department.

These acts include being:

    a.   assigned less desirable shifts;

    b.   assigned less desirable days off;

    c.   assigned less desirable work assignments;

    d.   denied promotions;

    e.   denied transfers;

    f.   denied overtime;

    g.   denied training opportunities;

    h.   denied compensation for work performed;

    i.   intimidated;

    j.   harassed based on race;

    k.   subjected to unwelcomed racially-charged conduct;

    l.   subjected to violence in the workplace;

    m.   subjected to harsh and undue discipline in retaliation;

    n.   subjected to retaliatory transfers; and

    o.   constructively discharged.

20.    Historically, each pumping station location operated with a Chief Operating Engineer.

21.    Until 2016, all of the Chief Operating Engineers with the Department were Caucasian.

22.    Within the past several years, there are several pumping stations within the Department operating without Chief Operating Engineers.

23.    Defendants maintained written or unwritten polices and/or practices for promoting, transferring, and providing overtime to the detriment of Plaintiff that created and proliferated a hostile or abusive work environment for Plaintiff, based on race.

24.    At all material times Plaintiff was represented by the International Union of Operating Engineers, Local 399; ("the Union").

25.     The Union is a party to a Collective Bargaining Agreements ("CBA") representing the employees of the Department.

26.     The CBA specifies the protocol under which employees may request transfers within job classifications or seek promotions to new job classifications.

27.     Under the operative CBA, Promotions are granted based on experience and seniority.

28.     Seniority is defined as an employee's continuous service in the employee's current job title.

29.     The Department consistently and deliberately, based on race, failed to follow written policies governing promotions, transfers, and overtime, as related to the Plaintiff.

30.     The Department has a deliberate and pervasive pattern and practice of systemic and continuing employment discrimination against Black employees, including the Plaintiff with respect to opportunities for advancement/leadership and promotions.

31.     Job openings within the Department are posted through the normal course of business.

32.     Job openings, however, are not filled even though qualified Black employees including the Plaintiff, have sufficient seniority, experiences, and performance history to qualify for the positions.

33.     Instead, job openings are deliberately left unfilled until a handpicked Caucasian candidate is chosen.

34.     Overtime is provided to employees based on seniority.

35.     The Department deliberately overlooked the seniority of Plaintiff by failing to offer overtime to him at the same rate and under the same conditions that the Department provides overtime opportunities to non-Black employees.

36.     By limiting the opportunity for Plaintiff to earn overtime wages, the Department created and proliferated an abusive and hostile work environment based on race.

37.     Plaintiff was also subjected to unwelcome, inappropriate conduct during his day-to-day activities.

38.     The unwelcome and inappropriate conduct included intimidation and violence in the work place, which is condoned and encouraged by the Department, also created and proliferated a hostile and abusive work environment based on race.

39.     Plaintiff was humiliated, harassed, and threatened daily by co-workers, supervisors, and Department leadership.

40.     The pervasive harassment, intimidation, and violence aimed at Plaintiff was meant to intimidate and force Plaintiff and other Black employees into accepting his status as a second-class citizen within the Department.

41.     Plaintiff was subjected to racially derogative language by non-Black managers and employees including being called "nigger," or referred to as "you people," and repeatedly told 'you have no business being in the department".

42.     The Department applies workplace rules and regulations in a racially-biased manner.

43.     When Plaintiff attempted to question this treatment he was physically intimidated, threatened, and verbally abused.

44.     Plaintiff was also subjected to racially insensitive email, screen savers, posters, cartoons, intimidating items and graffiti.

45.     The unwelcome and inappropriate conduct such as: racial slurs; conduct of a racial nature; racially motivated jokes; racially insensitive communications including but not limited to e-mail, screen savers, posters, cartoons, intimidating items, and graffiti; and unwanted verbal and physical contact based on race was so severe or pervasive as to create a hostile or abusive work environment.

46.     Defendants maintained written or unwritten policies and/or practices for discipline that creates or proliferates a hostile or abusive work environment for Plaintiff

47.     Plaintiff was subjected to unfair, arbitrary, and capricious discipline in retaliation for speaking out against his hostile work environment.

48.     Plaintiff was subjected to an illegal transfer to a less desirable location and/or work shifts in retaliation for speaking out against his hostile work environment.

49.     This retaliation against Plaintiff lead to reduced promotional, overtime and/or training opportunities.

50.     In response to the hostile and abusive work environments during his day-to-day activities, Plaintiff could only either continue to suffer or be constructively discharged.

51.     In response to these hostile work environments, Plaintiff made repeated complaints to the Department and to the City of Chicago.

52.     In response to the complaints, Defendants did nothing to remedy the hostile work environment.

53.     Instead of taking steps to alleviate the hostile work environment, Defendants instituted a policy of relation against Plaintiff.

54.     Defendants have maintained a systemic employment system that intentionally discriminates against or imposes disparate treatment upon a protected group based on race, including Plaintiff.

55.     This systemic employment system maintained by the Defendants is so pervasive that it has become the City of Chicago's standard operating procedure.

56.     The Defendants' systemic employment system has denied the Plaintiff tangible job benefits and therefore constitutes illegal discrimination.

57.     This intentional and disparate treatment of discrimination represents a department-wide pattern and practice, rather than a series of isolated incidents.

58.     Defendants' written and unwritten policies and practices regarding evaluation, compensation, and advancement in leadership and promotion subjected Plaintiff to ongoing disparate treatment based on race.

59.     Defendants' actions constitute a continuing violation of the rights of the Plaintiff.

60.     There are statistically significant disparities between the transfer, promotion, or placements awarded to Black employees and the transfer, promotion, or placement awarded to similarly situated non-Black employees sufficient to permit an inference of intentional discrimination.

61.     On or about August 1, 1987, Plaintiff began working for the City of Chicago as an operating engineer in the Department of Aviation.

62.     On or about March 1, 1993, Plaintiff transferred to the Department of Water Management in the position of operating engineer at the Lexington pumping station.

63.     Soon after being transferred, Plaintiff became Acting Assistant Chief Operating Engineer in the Department of Water Management.

64.     On several occasions during 2015, 2016 and 2017 Defendants posted a bid announcement for the position of Chief Operating Engineer in the Department of Water Management.

65.     Plaintiff applied for the position, was interviewed and was denied the promotion on the basis of his race.

66.     The application process included participation in a three-part test process: a multiple-choice test on general personnel information; a technical portion; and an oral interview related to technical aspects of the position.

67.     Each year, Plaintiff passed each portion of the application process and satisfied all of the requirements for the promotion.

68.     Defendants Stark, Deputy Commissioner of the Department of Water, and Conner Commissioner of the Department of Water, have ultimate policy making authority over promotions.

69.     Since 2014, Defendants promoted several Caucasians, less qualified and experienced than Plaintiff to the position of Chief Operating Engineer, including but not limited to Mark Henmuellen, Joseph Lynch and Robert Mussen.

70.     Since 2015, Defendants promoted several less qualified and experienced employees who are much younger than Plaintiff, including Andre Holland and Katherine Ealy.

71.    Despite Plaintiff s superior experience and qualifications, Plaintiff has not been offered the position of Chief Operating Engineer.

72.    In 2015, Plaintiff filed a complaint with the Human Resources Department of the City of Chicago, alleging he had been denied overtime. Plaintiff's complaint specifically targeted overtime pay made by Robert Mussen, also an Assistant Chief Operating Engineer in the Department at the time, who had less seniority in time and grade that did the Plaintiff, but had made over $100,000 in overtime as reported in the Chicago Sun Times.

73.    Defendants refusal to allow Plaintiff to work overtime violated the CBA and the Shakman Accord.

74.    After Plaintiff filed his complaint with Human Resources, Plaintiff was denied the opportunity to work up in grade including but not limited to the times when Harvey Hunker, the Chief Operating Engineer was off work due to illness.

75.    Robert Mussen, Caucasian who had less seniority in time and grade was allowed to work overtime and also allowed to work up in grade.

76.    Rather than promote Plaintiff to position of Chief Operating Engineer at the Lexington Pumping Station, the position of Chief Operating Engineer for the Lexington Pumping station was left vacant for many years.

77.    On May 30, 2017 Robert Mussen followed Plaintiff into the parking lot at the Lexington Pumping station and snatched Plaintiff's passenger door open in an aggressive and threatening manner.

78.     The incident was captured on the security camera and Plaintiff immediately foiled a Violence in the Workplace Grievance, asking that the security camera footage be preserved.

79.     Plaintiff's request to preserve the video camera footage was ignored and Plaintiff's VWP Grievance was dismissed with a finding that the complaint and activities did not rise to the level of violence in the workplace.

80.     On grievance on August 30, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging he had been denied a promotion based on racial discrimination.

81.     Defendants have created a negative workplace environment for Plaintiff through their actions.

82.     The Defendants acted under color of state law

83.     Plaintiff has been forced to request early retirement rather than continue to endure the daily hostile work environment, and on July 31, 2017, Plaintiff was constructively discharged

84.     Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

85.     The Department was aware of Edmond's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

86.     On August 8, 2017, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, ("EEOC") (See attached Exhibit "A")

87.     On August 30, 2017, the EEOC issued a Notice of Right to Sue Letter to Plaintiff. (See Notice of Right to Sue attached hereto as Exhibit" B")

## COUNT I: RACE DISCRIMINATION

Plaintiff realleges and incorporates by reference paragraphs 1 through 87 inclusive.

88.     By reason of the foregoing, Plaintiff was denied a promotion to the position of Chief Operating Engineer in violation of 42 U.S.C. § 2000e-2(a).

89.     Defendants acted willfully and in bad faith when it failed to promote Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for a promotion to Chief Operating Engineer, compensatory damages, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT II: RETALIATION

Plaintiff realleges and incorporates by reference paragraphs 1 through 87 inclusive.

90.     Plaintiff was denied overtime, has been threatened, subjected to racial and intimidating derogatory statements, transferred to a less desirable work location (from Lexington to Mayfair and then Jardine stations) and continuously faced open ended disciplinary investigations with the threat of other discipline in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

91.     As alleged above, these actions began occurring shortly after October 2012, when Plaintiff first filed a complaint with the City of Chicago Human Resources Department and the EEOC, and continued to the day when Plaintiff was constructively discharged.

92.     Up to the date of Plaintiff's constructive discharge, Plaintiff continued to be harassed and retaliated against by hi supervisor Robert Mussen, and continued to ignore Plaintiff's request for promotions, working up in grade and overtime and by subjecting Plaintiff to administrative disciplinary investigations that remained open for months without any definite resolution.

93.     A reasonable person in Plaintiff's position would find the Defendants' actions materially adverse.

94.     Defendants acted willfully and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for a retroactive promotion, compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT III: § 1981

Plaintiff realleges and incorporates by reference paragraphs 1 through 87 inclusive.

95.   Plaintiff was discriminated against in violation of 42 U.S.C. § 1981.

96.   Plaintiff was denied a promotion based on his race.

97.     Plaintiff was deprived of his 14th amendment right to be free from racial discrimination as a result of the Defendants' policy or custom of refusing promotions to African Americans who are Assistant Chief Operating Engineers seeking promotions to Chief Operating Engineer within the Department of Water, including:

a.   Katherine Ealy, a City of Chicago, Department of Water Management employee, currently stationed at the Jardine Filtration Plant who, upon information and belief set for last two Chief Operating Engineer examinations and successfully passed the examinations, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

b.   Richard Langston, a City of Chicago, Department of Water Management employee, currently stationed at the Lexington Pumping Station, who, upon information

and belief set for last two Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

c.  Bryant Simpson, a City of Chicago, Department of Water Management employee, currently stationed at the Jardine Filtration Plant Control Room, who, upon information and belief set for last Chief Operating Engineer examination and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

d.  Jimmy Fortune, a City of Chicago, Department of Water Management employee, currently stationed at the Roseland Pumping Station, who, upon information and belief, set for last three-four Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race; and

e.  Curtis Young, a former City of Chicago, Department of Water Management employee, currently retired, who, upon information and belief set for last two Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

98.     Defendants Stark, and Conner, and the City of Chicago in their respective capacities as decision makers over Plaintiff s performance evaluations and promotions, caused or participated in the deprivation of Plaintiff's rights under 42 U.S.C. § 1981.

WHEREFORE, Plaintiff demands judgment against all Defendants for a retroactive promotion to Chief Operating Engineer, compensatory damages, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT IV: § 1983

Plaintiff realleges and incorporates by reference paragraphs 1 through 87 inclusive.

99.     Plaintiff has a 14th amendment equal protection right to be free from racial discrimination as a factor in determining his qualification for a promotion pursuant to the U.S. Constitution and 42 U.S.C. § 1983.

100.    Plaintiff was deprived of his 14th amendment right to be free from racial discrimination as a result of the Defendants' policy or custom of refusing promotions to African Americans who are Assistant Chief Operating Engineers seeking promotions to Chief Operating Engineer within the Department of Water, including:

   a.    Katherine Ealy, a City of Chicago, Department of Water Management employee, currently stationed at the Jardine Filtration Plant who, upon information and belief set for last two Chief Operating Engineer examinations and successfully passed the examinations, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

   b.    Richard Langston, a City of Chicago, Department of Water Management employee, currently stationed at the Lexington Pumping Station, who, upon information and belief set for last two Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

   c.    Bryant Simpson, a City of Chicago, Department of Water Management employee, currently stationed at the Jardine Filtration Plant Control Room, who, upon information and belief set for last Chief Operating Engineer examination and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

   d.    Jimmy Fortune, a City of Chicago, Department of Water Management employee, currently stationed at the Roseland Pumping Station, who, upon information and belief, set for last three-four Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race; and

   e.    Curtis Young, a former City of Chicago, Department of Water Management employee, currently retired, who, upon information and belief set for last two Chief Operating Engineer examinations and successfully passed the examination, applied for the position, was interviewed but was denied a promotion to the position of Chief Operating Engineer, based upon race;

101.    Plaintiff suffered damages in lost wages and emotional distress and Defendants' actions were a proximate cause of his injuries.

   WHEREFORE, Plaintiff demands judgment against Defendants for a promotion to

Chief Operating Engineer, compensatory damages, punitive damages, as allowed by law

against the individual defendants, prejudgment interest, attorneys' fees, costs, and such

other and further relief as the court deems proper.

## COUNT V: VIOLATION OF TITLE VI

Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1-87.

102.    Jurisdiction is conferred on this Court by 28 USC Sec 1332 and 28 U.S.C.A. Sec. 1343

(a) (3).

Title VI of the 1964 Civil Rights Act provides in pertinent part:

"Nondiscrimination in federally assisted Program.   No person in the United
States shall on the ground of race, color, or national origin, be excluded from
participation in, be denied the benefits of or be subjected to discrimination under any
program or activity receiving federal financial assistance."  42 U.SC. Sec 2000 et. seq.

103.    Upon information and belief, the City of Chicago accepts and receives funding from the

State of Illinois and other sources, including directly from the federal government for such

projects as the Community Development Block Grant (CDBG), the Emergency Solutions Grant

(ESG), the HOME Investment Partnerships Program (HOME), and the Housing Opportunities

for People with AIDS (HOPWA) Program.  Upon information and belief, the City of Chicago

also receives funding at the federal level as drinking water quality and wastewater discharges are

regulated by the United States Environmental Protection Agency, which also provides funding to

utilities through State Revolving Funds.  In addition, the City of Chicago also receives federal

funding to assist in other areas of local government such as those associated with healthcare,

income security, education, and transportation

104. Said funding includes federal and state funds through the U.S. Housing and Urban Development's (HUD) and other sources, and is a form of financial assistance, which the City of Chicago receives and accepts from the federal government.

105. In 2014, 2015 and 2016, the Defendant City of Chicago posted a bid announcement for the position of Chief Operating Engineer in the Department of Water Management.

106. Each year Plaintiff participated in the application process, passed each portion of the test and was denied the promotion.

107. Defendants Stark, Deputy Commissioner of the Department of Water, and Conners, Commissioner of the Department of Water, have ultimate policy making authority over promotions.

108. Since 2014, Defendants promoted at least 4 less qualified and experienced Caucasians than Plaintiff to the position of Chief Operating Engineer.

109. Since 2014, Defendants have failed and refused to promote the Plaintiff and 5 other well qualified Black employees to the position of Chief Operating Engineer.

110. Despite Plaintiff s superior experience and qualifications, Plaintiff has not been offered the position of Chief Operating Engineer. The Plaintiff was also subjected to the following treatment:

a. Improperly denied numerous opportunities to work overtime resulting in lost wages, because Plaintiff is Black;

b. Wrongfully accused of insubordination, failure to perform work and conduct unbecoming in retaliation for filing a complaint about the discriminatory treatment;

c. Wrongfully subjected to pre-disciplinary hearings for false accusations of insubordination, violation of safety protocols insubordination, and violation of a written directive; and

d. Subjected to racially derogatory statements and intimidating threatening statements made by his White co-workers.

111. That Defendants treat similarly situated employees who are not black differently.

112. Plaintiff repeatedly reported the incidents to the City of Chicago Department of Human Rights to no avail.

113. That each time Plaintiff filed a complaint or reported an incident of discriminatory treatment he was further harassed and intimidated.

114. The treatment of Plaintiff and statements made to him in the presence of other employees and/or reported to the City of Chicago were racially motivated and was an attempt to subject Plaintiff a Black man, to discriminatory treatment.

115. In allowing Plaintiff to endure discriminatory treatment and derogatory statements Mussen, Conner and Stark's actions were all based upon race, willful, malicious and in bad faith, with an improper motive of subjecting Plaintiff to abuse with a malicious intent of violating Plaintiff's civil rights.

116. As a proximate result of Mussen, Conner and Stark's racial discrimination toward Plaintiff, Plaintiff suffered damages in the disruption of employment, harm to his career, emotional distress, embarrassment, psychological damage, and the deprivation of his civil rights.

117. Mussen, Conner and Stark's actions occurred while acting in their official capacity as Chief Operating Engineer, Commissioner of the Water Department and Deputy Commissioner of the Water Department and agents servants and/or employees of the Water Department and the City of Chicago.

118. Mussen, Conner and Stark's actions and those of the other Department of Water Management employees are imputed to the City of Chicago

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays as follows:

A.  A declaratory judgment that Defendants and each of them violated 42 USC Sec. 2000.

B   A permanent injunction-restraining Defendants and each of them, from violating 42 USC Sec. 2000.

C.  Compensatory damages in the sum total in excess of $75,000 for lost wages, emotional distress, psychological damage, embarrassment, deprivation of civil rights and out of pocket expenses.

D.  Punitive damages in an amount equal to 2% of Defendants' combined net worth.

E.  Reasonable attorneys' fees and all costs of the proceeding

## COUNT VI
## VIOLATION OF THE ADEA

Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 87 above.

119.    Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

120.    Jurisdiction also arises pursuant to 28 U.S.C.A. §1343(4).

121.    Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon age with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this complaint as Exhibit "A".

122.    Plaintiff has filed this cause pursuant to a Right to Sue Letter issued by the Equal

Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this complaint as Exhibit "B".

123.     Plaintiff, at all times pertinent to this complaint, was a resident within the venue and jurisdiction of this judicial district, and was within the protected age group as provided by the ADEA.

124.     The Defendant at all times relevant to this complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

125.     Plaintiff was employed by the Defendant from November 1987 until he was wrongfully constructively terminated on July 31, 2017. At the time of his termination he was 62 years of age.  Plaintiff was replaced with a male employee younger than 40 years of age.

126.     In direct violation of the ADEA, the defendants engaged in the age discriminatory acts described in the Charge of Discrimination, attached to the complaint and incorporated herein by reference.  These acts are not limited to and include being:

a.     assigned less desirable shifts;

b.     assigned less desirable days off;

c.     assigned less desirable work assignments;

d.     denied promotions;

e.     denied transfers;

f.     denied overtime;

g.     denied training opportunities;

h.     denied compensation for work performed;

i.     intimidated;

j.     harassed based on race;

k.     subjected to unwelcomed racially-charged conduct;

l.     subjected to violence in the workplace;

m.     subjected to harsh and undue discipline in retaliation;

n.      subjected to retaliatory transfers; and

o.      constructively discharged.

127.    As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and has otherwise suffered monetary damages.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, City of Chicago as follows:

A.      For damages in an amount in excess of $75,000, equal to Plaintiff's back pay and benefits from August 1, 2017 through the present pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

B.      For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.      For reinstatement to his previous position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D.      For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and

E.      For such other and further relief as is just and equitable.

## COUNT VII
## ADEA – WILFUL VIOLATION

Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 87 and 119-127 above.

128.    Defendant's discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.

WHEREFORE, Plaintiff demands judgment against the Defendant, JLL as follows:

A.      For damages in an amount equal to Plaintiff's back pay and benefits from August

1, 2017 through the present pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

B.    For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.    For reinstatement to his previous position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D.    For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c);

E.    Punitive damages; and

F.    For such other and further relief as is just and equitable

## COUNT VIII
## VIOLATION OF THE FAIR LABOR AND STANDARDS ACT

Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 87 above.

130.    This Count arises from the City of Chicago's violation of the FLSA for its failure to pay Plaintiff for work done at a senior job classification and/or in addition to their own work within the same classification.

131.    Plaintiff was directed to work at a level senior to his job classification, and Plaintiff did the work.

132.    Plaintiff was entitled to be paid at a level commensurate with the job classification under which the work was performed.

133.    Defendant did not pay Plaintiff for wages for time worked at a level commensurate to the classification under which the work was performed.

134.    Defendant's violation of the FLSA was willful.

WHEREFORE, Plaintiff respectfully request that this Court grant the following relief:

A.   A judgment in the amount of all unpaid wages owed to Plaintiffs and the Wage Class;

B.   Liquidated damages in the amount equal to the unpaid wages;

C.   Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

D.   Grant Plaintiffs and the Wage Class such other and further relief as this Court finds necessary

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff demands a jury trial on all issues.

Respectfully submitted,

/s/ Calvita J. Frederick

Attorneys for Plaintiff
Calvita J. Frederick& Associates
Post Office Box 802976
Chicago, Illinois 60680
(312) 421-5544
(312-277-7190 facsimile
ARDC # 6184001