UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL OUTLEY,                           )
                                          )
                    Plaintiff,            )      17 C 8633
                                          )
            vs.                           )      Judge Gary Feinerman
                                          )
THE CITY OF CHICAGO and ROBERT MUSSEN,    )
                                          )
                    Defendants.           )

### MEMORANDUM OPINION AND ORDER

In a previous lawsuit, Michael Outley sued the City of Chicago and three officials of its

Department of Water Management ("DWM")—then-Commissioner Thomas Powers, Deputy

Commissioner Alan Stark, and Chief Operating Engineer Paul Mazur—alleging violations of 42

U.S.C. §§ 1981 and 1983, Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d

*et seq.*, § 2000e *et seq.*, and Illinois law. *Outley v. City of Chicago*, No. 13 C 1583 (N.D. Ill.)

(Lefkow, J.), ECF No. 118. The district court granted summary judgment to the defendants. *Id.*,

ECF Nos. 204-205 (reported at 354 F. Supp. 3d 847 (N.D. Ill. 2019)), *judgment amended*, ECF

No. 220. That judgment is on appeal. *Outley v. City of Chicago*, No. 21-2476 (7th Cir.)

(argument set for Jan. 24, 2023).

In the present suit, Outley brought claims against the City, Stark, and two other DWM

officials—Commissioner Randy Conner and Chief Operating Engineer Robert Mussen—alleging

violations of 42 U.S.C. §§ 1981 and 1983, Titles VI and VII, the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, his union's collective bargaining

agreement, and the *Shakman* Accord. Doc. 55. On Defendants' Rule 12(b)(6) motion, the court

dismissed Outley's Title VI and § 1981 claims and his claims for breach of the collective

bargaining agreement and the *Shakman* Accord. Docs. 112-113 (reported at 407 F. Supp. 3d 752 (N.D. Ill. 2019)). The court also dismissed parts of Outley's Title VII, ADEA, and § 1983 claims on claim preclusion and timeliness grounds. 407 F. Supp. 3d at 759-62.

After discovery closed, Outley moved for summary judgment as to liability on the hostile work environment and constructive discharge components of his Title VII claim, his § 1983 claim against Mussen, and his ADEA claim, Doc. 215, and Defendants cross-moved for summary judgment on all claims that survived dismissal under Rule 12(b)(6), Doc. 220. The court denied Outley's motion, and it granted Defendants' motion as to all claims except the Title VII hostile work environment claim against the City and related § 1983 claim against Mussen. Docs. 262, 264 (reported at 2021 WL 4745393 (N.D. Ill. Oct. 12, 2021)).

Trial eventually was set for September 23, 2022, and several pretrial filing deadlines were set as well. Docs. 279, 285, 287-288. It would be a substantial understatement to say that things did not go smoothly. As the court has described in detail both in writing and on the record, and as summarized below, the fault belongs entirely to Plaintiff's counsel, Calvita Frederick, who turned in the poorest performance by an attorney that the undersigned has seen during his 12-plus years on the bench. The end result was a mistrial caused by Attorney Frederick's persistent flouting of the court's pretrial rulings. Doc. 332.

Remaining for resolution are Defendants' motion to dismiss with prejudice under Local Rule 16.1 and Civil Rule 41(b), Doc. 321, and the court's order to show cause why this case should not be dismissed with prejudice and why Attorney Frederick should not be sanctioned under Civil Rule 11(b) and/or referred to this District's Executive Committee for possible discipline, Doc. 333. For the reasons set forth below, the court denies Defendants' Local Rule 16.1 motion and grants their Rule 41(b) motion. In the alternative, the court holds that if

dismissal were not warranted under Rule 41(b), it would be warranted under the court's inherent authority. Finally, Attorney Frederick is sanctioned under Rule 11(b) and is referred to the Executive Committee for potential discipline.

## Background

"I fought so hard to get the trial continued because I'm just physically, mentally, emotionally not up to it." Doc. 338 at 251:22-251:24. Those words, spoken by Attorney Frederick the day before the mistrial, were completely on point. And they reveal that she well knew that her ceaseless barrage of meritless filings in the weeks and days preceding trial were just that—meritless, and a series of ruses designed to obtain a continuance of a trial that she was wholly unprepared to conduct. The court has described elsewhere much of the pertinent background, Doc. 308; Doc. 326 (reported at 2022 WL 4448739 (N.D. Ill. Sept. 23, 2022)); Doc. 333; Doc. 303 at 3:16-10:21; Doc. 316 at 5:25-31:19; Doc. 337 at 11:02-12:02, incorporates by reference those descriptions, and provides an overview here.

### A.       Pretrial Proceedings

On August 31—four weeks after the extended motion *in limine* (occasionally, "MIL") deadline, Doc. 285, and over four weeks after Attorney Frederick told Defendants' counsel that Outley would not be filing motions *in limine*, Doc. 326 at 1; Doc. 296-2 at 2-4—Outley moved for leave to file *instanter* twenty motions *in limine*, Docs. 294, 294-1. The court denied Outley's motion. Doc. 298; *see* Doc. 303 at 3:18-6:15 (providing the rationale for the denial); Doc. 308 at 1-2 (further explaining the denial).

On September 1, Outley filed an untimely, unilateral pretrial order (followed by another on September 7). Docs. 279, 295, 301. Correspondence between opposing counsel as well as Attorney Frederick's own statements make clear that she knowingly and intentionally abandoned the parties' plan to collaborate on a final pretrial order, as required under Local Rule 16.1.

3

Doc. 326 at 5-6; *see* Doc. 308 at 2; Doc. 293 at ¶ 7 (in which Attorney Frederick stated, at nearly 11:00 p.m. on August 31, the day the pretrial order was due, that "the prosecution team would prefer to wait until the Court has ruled on the MILs before completing the preparation of the Joint Pre-Trail [sic] Order"). Given Attorney Frederick's abdication of her responsibilities as counsel, Defendants timely filed a unilateral pretrial order. Docs. 279, 291.

At the final pretrial conference on September 7, the court ruled that, given Attorney Frederick's knowing and intentional failure to collaborate on the production of a final pretrial order, Outley would be limited at trial to using exhibits that were (a) identified in Defendants' final pretrial order or (b) the subject of Defendants' timely filed motions *in limine* (to the extent permissible under the court's *in limine* rulings). Doc. 303 at 3:18-11:14. Likewise, the court ruled that Outley's witnesses would be limited to those on Defendants' witness list. *Id*. at 3:18-10:24. The court denied Defendants' motion to dismiss for want of prosecution due to Attorney Frederick's failure to collaborate on the final pretrial order, Doc. 292, while noting that such a dismissal "probably" would have been "within [its] discretion," Doc. 303 at 8:15-8:17.

During the final pretrial conference, Attorney Frederick made a series of intemperate remarks, including these:

- "[I]t amazes me how in this -- in this jurisdiction -- and I'm just venting here for a minute. In this jurisdiction, a judge can set a court case for a ruling and not be ready and kick it another two months, and that's just fine; but if a -- if a counsel needs a couple of extra weeks, it's -- they get ripped a new butthole and their case is very close to dismissed. It just -- it just amazes me how that happens over and over and over. I am the scum of the Earth and think -- and I'm crazy because I missed a court deadline; but -- and I can't say for sure, but if you're not, you're one of the few who hasn't set a date for a ruling and kicked it another two months because they just weren't ready." Doc. 303 at 30:01-30:13.

- "We didn't dot every 'i,' didn't cross every 't' on time, but we did -- we have not blown off preparing for this case. We just ran late, as you do and every other judge in this jurisdiction and every other major law firm in this jurisdiction does from time to time. But when a solo practitioner does it, they rip me a new butthole. And talk

about how -- are you kidding?  Failure to prosecute this case?  Are you kidding?"  *Id*. at 32:02-32:09.

On September 15—eight days after the court's on-the-record rulings at the final pretrial conference and eight days before trial—Outley filed a roughly forty-page motion asking the court to take judicial notice of twenty exhibits.  Doc. 305.  Most of those exhibits had been referenced or encompassed by Outley's untimely motions *in limine* and/or the exhibit list in his first untimely, unilateral final pretrial order.  Doc. 326 at 2.  So, the motion for judicial notice represented Outley's second or third attempt to secure admission at trial of most of the documents discussed therein.  *Ibid*.  The motion "respectfully request[ed] that this Court issue a Final Written Order on this Motion for Judicial Notice as soon as practicable but not later that Tuesday, September 20, 2022.  Plaintiff understands that the Court is busy but the necessity for this Motion arose out of the adverse to Plaintiff rulings of September 7, 2022.  Certainly, <u>and very respectfully</u>, the Court cannot expect Plaintiff to sit idle while his due process right to a fair and impartial trial is systematically, slowly, irreparably, and pragmatically being eroded to advance the Defendants' goal that Plaintiff goes to trial with the case that the Defendants have envisioned and want."  Doc. 305 at 40.

On September 16, the court entered an order granting in part and denying in part Defendants' timely filed motions *in limine*.  Doc. 308.  As noted below, Attorney Frederick mistakenly believed for quite some time that the court had granted in full Defendants' motions *in limine*—a mistake resulting from her apparent failure to read the court's order.

On Monday, September 19—with trial set to begin on Friday, September 23—Outley filed a motion to stay "all proceedings in this case pending a ruling from the United District Court for The Northern District of Illinois Eastern Division on Plaintiff's forthcoming motion under 28 U.S.C. §§ 2201-2202 for Declaratory Judgement on Violation of Due Process Rights."

Doc. 309 at 1. The motion "include[d] the request for a declaration that pursuant to 28 U.S.C. § 455(a) the Honorable Judge Gary Feinerman should disqualify himself from the instant action." *Id*. at 2. The motion's object was to circumvent the court's pretrial rulings without waiting to pursue an appeal:

> There is an argument that if the stay is granted, the Defendants will not go to trial on their own terms and will lose the substantial "tactical" advantage they have now but that is the whole point of the declaratory judgment action: Defendants should have never been granted that substantial "tactical" advantage to begin with. Very respectfully, they only have that advantage because of rulings that blatantly violated Plaintiff's due process rights.

*Id*. at 3. Plaintiff's reply in support of the motion included various inappropriate and intemperate remarks toward the court. Doc. 313 at 2 ("[I]t would be unwise for the Court to try to get along with the Defendants and one more time, as it has become the norm in this litigation unfortunately, grant their wishes."); *id*. at 12-13 ("If Plaintiff's attorneys were not constantly forced to respond to speculative assaults which do nothing but distract Plaintiff from fighting for his legal and constitutional rights in what has now become a blatant effort at providing procedural pretexts to this Court which can then use them as a vehicle to issue rulings that violate Mr. Outley's due process, perhaps they would have been able to file the Complaint [in the promised declaratory judgment action] before the conference.").

The court denied Outley's stay motion on the record during a September 20 hearing, Doc. 315, explaining that a stay would prejudice Defendants, the court, and court staff and that, given the circumstances, the threatened declaratory judgment action did not warrant recusal. Doc. 316 at 25:12-31:08; *see In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005) ("There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties. … One reason for this policy is that a per se rule of disqualification would allow litigants to judge shop by filing a suit against the presiding judge.");

*Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998) ("[I]t is improper for a lawyer or

litigant … to *create* the ground on which he seeks the recusal of the judge assigned to his case.

That is arrant judge-shopping."); *Agrawal v. Briley*, 2008 WL 4449862, at *2 (N.D. Ill. Sept. 30,

2008) ("The judge's previous adverse rulings are not a sufficient basis for recusal, … nor does

the fact that a litigant has named a judge in a collateral lawsuit ordinarily establish a basis for

recusal.").

Outley's motion for judicial notice became fully briefed less than an hour before the

scheduled start of the September 20 hearing.  Docs. 310, 314.  At the hearing, Attorney Frederick

expressed disappointment that the court had not yet ruled on that motion, arguing that the court

"[didn't] have an option" regarding judicial notice, and stating: "For this Court to suggest that

there's something that they need to review as to whether they're going to take judicial notice of

[a specific] case, I'm appalled.  I really don't understand why that's not something that's a

simple ruling and why this Court believes that they are not required, not required -- not have the

option, they are not required by both the federal rules and the local rules to take judicial notice."

Doc. 316 at 33:01-33:02, 33:19-33:25, 35:01-35:09.  Attorney Frederick also represented at the

September 20 hearing that Outley's declaratory judgment suit would be filed later that day.

Doc. 316 at 25:14-25:18.  It was not filed later that day.

On the morning of September 22, the day before trial was to commence, Outley (through

Attorney Frederick) moved "ex parte" for an "emergency injunction to stay proceedings."

Doc. 317 (capitalization altered).  The motion sought "time for the parties' rights to be declared

by the United District Court for The Northern District of Illinois Eastern Division following the

filing of Mr. Outley's Complaint for Declaratory Relief for Violation of Due Process Rights by

Honorable Judge Gary Feinerman."  *Id*. at p. 1.  The motion represented that the declaratory

judgment complaint was "being revised." *Id.* at ¶ 2. The motion stated that, "contrary to Honorable Judge Feinerman's belief that Mr. Outley's attorneys lack experience in the manner things are handled in federal court and for such reasons have created a lot of unacceptable disruptions to the formalities of the process," he was "not trying to carve his way out of the trial and [was] not trying to disrupt anyone's calendar" but was "simply exercising his God given right to fight to get back what he has been deprived of: evidence that has been improperly icluded [sic] and continues to be improperly excluded, a fair and impartial arbiter and a fair and impartial trial." *Id.* at ¶ 10. The motion argued that the court "ha[d] no rights to keep Mr. Outley's case hostage of his illegal rulings and no rights to cripple it as he has already done with the Summary Judgement Order of October 21, 2021, his blank ruling on Defendants' MILs, his ignoring of Mr. Outley's timely filings, and as he appears poised to do in the upcoming trial where he has already signaled his intention to rule against the law regarding some specific jury instructions tendered by Mr. Outley." Doc. 317 at ¶ 40. The motion further argued:

> 1) Honorable Judge Feinerman is personally prejudiced and biased against Mr. Outley's counsel of record, 2) he has lost the ability to remain objective and rational in the face of ongoing events, 3) he is prone to blindly follow and fully embrace mere speculations and mischaracterizations of single sentences in a single filing propounded by opposing counsel, 4) he does not hesitate to use his power to retaliate against an attorney of record who clearly explained how her client's due process rights are being violated and that Mr. Outley's attorneys have a professional obligation to protect Mr. Outley['s] due process rights, and 5) even after the clear explanations of the violations, he continues to follow the "alternative speculative realty" [sic] he and [defense counsel] have created and chose to focus on. Notwithstanding the clear explanation that he is violating Mr. Outley's rights by issuing rulings that are in conflict with the law (many of which reflect [defense counsel's] flawed arguments, *verbatim*) and after Mr. Outley's counsel got him to admit on the record that he knows that Defendants' arguments conflict with the law, he still continues to signal his intention to rule against the law.

*Id.* at ¶ 41.

Later that morning, Outley filed a motion "to renew, and for clarification." Doc. 319 (capitalization altered and emphasis omitted). The motion sought to "[r]enew[]" (1) Outley's timely response to Defendants' motions *in limine* (which the court had acknowledged in its September 16 *in limine* order) (2) his motion for judicial notice; and (3) "his repeated oral requests for this Court to take Mandatory Judicial Notice of each and every item listed in Plaintiff's Motion of September 15, 2022." *Id*. at ¶¶ 1-3. The motion again faulted the court for not yet having ruled on Outley's motion for judicial notice: "[A]t merely 24 hours from the start of the trial, the Court has still not honored his duty to take the mandatory judicial notices Plaintiff requested. The Court has an obligation to judicially notice the items in Plaintiff's request under FRE 201(b)(2) and FRE 201(c)(2), with required instructions to the jurors that those are notices of adjudicative facts and the jurors have to accept all that evidence <u>as a fact</u>." *Id*. at ¶ 12.

Before those September 22 filings, at the September 20 motion hearing, the court stated: "At the final pretrial conference, I did say I was going to issue a ruling on all the motions *in limine*. I was referring to the defendants' motions *in limine*, which I did rule on on September 16th." Doc. 316 at 42:18-42:21; *see also id*. at 8:23-8:24 (referencing "my September 16th order"), 18:25 (referencing "my order on September 16th"), 42:16-42:17 (referencing "the written order that I entered on September 16th of 2022"). During that hearing, Attorney Frederick asked the court: "Are you aware that some of the defendants' motions *in limine* conflict with the law?" Doc. 316 at 43:24-43:25. The question evinced Attorney Frederick's mistaken belief that the court had granted all of Defendants' motions *in limine*. The court responded: "Yes, I [am], because I denied, either in whole or in part, many of the defendants' motions *in limine*." *Id*. at 44:02-44:04.

It thus should have been clear to Attorney Frederick after the September 20 hearing that the court had issued an order on Defendants' motions *in limine* on September 16 and that the order granted in part and denied in part those motions. Moreover, Outley attached the court's September 16 order to the emergency injunction motion he filed on September 22. Doc. 317-39. Nevertheless, Outley's September 22 motions revealed that Attorney Frederick had not read the court's September 16 *in limine* order. *E.g.*, Doc. 317 at ¶ 32 ("Honorable Judge Feinerman[] did not explain why he never took Mr. Outley's timely Response to Defendants' MILs under consideration. He ruled straight for the granting of Defendants' MILs., in block, without ever mentioning Mr. Outley's Response."); Doc. 319 at ¶ 6 ("[T]he Court never translated its thinking [on Defendants' Motion *in limine* No. 13] into a ruling, *instead* with one swift move the Court later issued a ruling granting Defendants' MILs <u>in block</u> effectively overruling its prior thinking."). As the September 16 *in limine* order made perfectly clear, the court acknowledged and considered Outley's timely response to Defendants' motions *in limine*, and it did not grant Defendants' motions *in limine* "in block." Doc. 308.

In response to Outley's September 22 motions, the court set a motion hearing "for 9/23/2022 at 8:45 a.m. in Courtroom 1441." Doc. 320. Later in the day on September 22, Defendants filed a motion to dismiss this case for want of prosecution, Doc. 321, to which Plaintiff responded the next morning, Doc. 324.

## B. Trial Proceedings

On the morning of September 23, three days after Outley's motion for judicial notice had become fully briefed, Doc. 314, the court issued an eighteen-page opinion denying the motion. Docs. 325-326 (reported at 2022 WL 4448739 (N.D. Ill. Sept. 23, 2022)). The opinion articulated three separate and independent grounds for the denial, explaining that judicial notice could not be used to circumvent the requirements of either Local Rule 16.1 or

Civil Rule 26(a)(3)(A)(iii) and that, in any event, Outley's requests for judicial notice failed on the merits under the Evidence Rules.

Outley and Attorney Frederick did not arrive on time for the 8:45 motion hearing, Doc. 337 at pp. 1-2, entering the courtroom after the hearing had begun, *id.* at 5:25. Attorney Frederick indicated that she had not known where in the courthouse to go for the hearing. *Id.* at 6:15-6:18. But the courtroom number had been listed in two orders, one setting the September 23 trial date, Doc. 288, and the other setting the September 23 motion hearing on the two motions Outley had filed the previous day, Doc. 320.

The court discussed with the parties Outley's opposition to Defendants' motion to dismiss for want of prosecution. Doc. 337 at 21:06-44:22. In that filing, Outley notified the court for the first time that, in the run-up to trial, Defendants had provided Attorney Frederick with witness declarations dated September 13, 15, and 22. Doc. 324 at 4-5; Docs. 324-2, 324-3, 324-5, 324-7. Each declaration had been provided to Attorney Frederick on the day it was dated. Docs. 324-1, 324-2, 324-3 (email and declarations dated September 13); Docs. 324-4, 324-5 (email and declaration dated September 15); Docs. 324-6, 324-7 (email and declaration dated September 22). Attorney Frederick requested time to depose the declarants. Doc. 324 at 4-5; Doc. 337 at 36:7-37:13. Attorney Frederick indicated that during discovery she had not deposed the declarants—all listed on Defendants' witness list, Doc. 337 at 24:16-24:18—because she "didn't think it was necessary," *id.* at 28:15-28:18. The court asked Attorney Frederick why she had not brought the declarations to the court's attention on September 13 (when the first declarations were provided to her), September 15 (when another declaration was provided), or September 20 (during the lengthy motion hearing). *Id.* at 29:09-31:20. Attorney Frederick eventually admitted that she had not seen any of the declarations until September 22. *Id.* at

31:19-32:14.  The court later ruled that no continuance was warranted because the declarations were sent to Attorney Frederick on the days they were created; the declarants had earlier been disclosed as potential witnesses, and Outley had declined to depose them during the discovery period; Outley in fact had benefitted from the declarations, as they gave him a preview of the declarants' expected testimony; and Outley would have the chance to cross-examine the declarants at trial about their declarations and meetings with Defendants' counsel.  *Id*. at 40:15-42:04.  The court cited Outley's unexcused delay in raising the issue with the court as a second and independent reason for denying a continuance.  *Id*. at 42:05-44:11.

By the afternoon of September 23, the jury was empaneled and trial commenced.  During her opening statement, Attorney Frederick referenced Outley's retaliation claim, even though that claim had not survived summary judgment: "[T]his case is about discrimination based on race, harassment, and retaliation that Mr. Outley suffered."  *Id*. at 46:07-46:08; *see* 2021 WL 4745393 at *16-17.  Defendants objected to Attorney Frederick's reference to the retaliation claim.  Doc. 337 at 46:10.  The court invited Attorney Frederick to rephrase her remarks and gently suggested that she "mentioned a word in there that [she] didn't mean to mention" when she had said "[r]etaliation."  *Id*. at 46:13-46:24.

Following another objection, the court warned Attorney Frederick at a sidebar that she was "going beyond what this case is about."  *Id*. at 48:03-48:10.  At that time, Attorney Frederick claimed that she had not yet seen the court's September 16 *in limine* order, *id*. at 48:13-48:17—this despite her having attached the order to a motion she filed the previous day, Doc. 317-39.  The court also reminded Attorney Frederick of a fact that she undoubtedly knew from the court's summary judgment ruling: The retaliation claim had not survived summary judgment.  *Id*. 49:06-49:16.

Moments later, Attorney Frederick told the jury: "Mr. Outley wil]l tell you that the racism, the harassment, was palpable.  At one point, Mr. Outley even saw a photo of a noose --." *Id*. at 50:11-50:13.  This drew from Defendants an objection and a motion for a mistrial.  *Id*. at 50:14-50:25.  To be clear, Outley did not see a noose in his workplace; rather, Attorney Frederick was referencing a photograph of an apparent noose in a DWM truck that had appeared in newspaper articles.  Docs. 306-12, 306-17.  Defendants had moved *in limine* to exclude such articles.  Doc. 286 at 8-9 (Defendants' Motion *in limine* No. 5).  The court's *in limine* order had left the door open for Outley to argue a permissible use of the articles, but indicated that "[a]ny such argument should be previewed with the court outside of the jury's presence."  Doc. 308 at 4.  Attorney Frederick had not previewed with the court her plan to reference the photograph in her opening statement.

It bears mention at this juncture that, although Attorney Frederick claimed at certain points not to have read the court's September 16 *in limine* order, her September 22 filings indicated her (mistaken) view that the court had granted Defendants' motions *in limine* "in block."  Doc. 317 at ¶¶ 30, 32; Doc. 319 at ¶¶ 6, 11; *see also* Doc. 319 at ¶ 4 ("[o]bject[ing] to this Court's order to grant" certain of Defendants' motions *in limine*, including Motion *in limine* No. 5).  And Attorney Frederick knew that the court had denied Outley's motion for judicial notice.  Doc. 337 at 7:01-7:04.  So, if Attorney Frederick truly had not reviewed the court's *in limine* order and sincerely believed that the court had grated Defendants' motions "in block," there was even less of an excuse for her to have mentioned the photograph.

At sidebar, the court explained to Attorney Frederick:

> I'm going to terminate the plaintiff's opening statement because you haven't read the [rulings on the] motions *in limine*, and, therefore, you don't know what's fair game and what isn't.  I mean, you haven't read my order on the motions *in limine*, which was issued last Friday.  It's on the docket,

> docket 308, so you don't know what's fair game and what's not. And because you don't know what's fair game and what's not, you can't keep your opening statement within the confines allowed by my rulings on the motions *in limine*.
>
> And that's, again, on you, entirely, 100 percent, and not on anybody else because had you read the [rulings on the] motions *in limine*, you would have been able to keep your opening statement within the confines.
>
> So, I'm going to terminate your … opening statement right now because I can't -- there's been enough prejudice as there is with the noose statement. And I can't take a risk that it's going to come to the point where we're going to have to declare a mistrial and do -- and bring another venire in.

*Id*. at 50:18, 51:10-52:03.  The court then informed the jury that "[t]he plaintiff's opening statement is concluded" and instructed the jury to "disregard that reference to the photo."  *Id*. at 52:10-52:13.

After the jury retired for the day, *id*. at 62:05-62:20, the court told Attorney Frederick that it "[didn't] know what to say about" her "not having read the rulings on the motions *in limine* yet," *id*. at 73:15-73:17.  Attorney Frederick then represented that she *had* "read them" but "just [didn't] remember what they are right now."  *Id*. at 73:20-73:21.  The court admonished Attorney Frederick as follows:

> [T]he evidence has to be within the confines of the [rulings on the] motions *in limine*; and if the opening statement talks about something that is barred by the [rulings on the] motions *in limine* or something that I said, "Don't get into this unless you check it with me first," which was the case with a number of those -- a number of matters in the motions *in limine*, then I have to cut off your [opening statement].  And if you weren't familiar with the [rulings on the] motions *in limine*, it was going to keep happening.
>
> And, you know, this is a serious case, and it got past summary judgment.  And if Mr. Outley is right on the facts, you know, the "n" word, "monkey," "boy," this is a serious case.  But I just -- you're not making it easier, Ms. Frederick, on Mr. Outley.  You're making it harder on your side by not -- by -- well, one, by doing all the things that happened in August and September and not being aware of what -- what even the claims are.  There was not a retaliation claim.  That was -- that was disposed of on summary judgment about a year ago.  And not being familiar with the [rulings on the] motions *in limine*.

I mean, it's a serious case, and it's, you know, depending on who the jury believes, a winnable case that, you know, you're -- you're not making the presentation that you ought to be making.

So, I'd encourage you -- you know, you need to make sure that you are prepared for Monday so this -- I don't enjoy cutting off or terminating -- I've never terminated an opening statement. I don't enjoy cutting people off. I don't enjoy terminating things. But the way to avoid that is to know what the case is about and stay within the confines of what the case is about, and then there will be no problem.

*Id*. at 73:23-75:02. In response, Attorney Frederick expressed displeasure with the timing of the court's ruling on Outley's motion for judicial notice—which, as noted, came in an eighteen-page opinion three days after the motion had become fully briefed. *Id*. at 75:04-75:10.

On Sunday, September 25, twenty-nine minutes before midnight, Outley filed a motion for a mistrial or, in the alternative, to admit certain documents at trial. Doc. 327. The court denied that motion for reasons stated on the record. Doc. 338 at 4:07-17:05, 128:16-129:01.

Before trial resumed, the court pressed Attorney Frederick on her earlier equivocation as to whether she had or had not read the court's *in limine* order. Doc. 338 at 2:23-3:11. Attorney Frederick said she had not seen the order and professed to have been "confused" as to whether she had read the rulings. *Id*. at 3:09-3:12, 3:15-3:16, 3:23-4:03.

Trial continued with Attorney Frederick's direct examination of Outley. The following exchange between Attorney Frederick and Outley led to testimony violating the court's *in limine* rulings:

Q. Was there another reason you sued the City?

A. This culture of hatred that's in the workplace of the Water Department had to be put on notice that the hatred is so deep.

Q. When you say notice, what are you referring to?

A. The Inspector General had to come in --

*Id*. at 43:1-43:06. At this point, Defendants objected and moved for a mistrial. *Id*. at 43:07-43:12. Defendants had moved *in limine* to exclude evidence, testimony, or argument about certain reports by the City's Office of Inspector General ("OIG") or press releases regarding the same. Doc. 286 at 12-13. The court's *in limine* order had left the door open to permissible uses of the OIG reports and related press releases. Doc. 308 at 5. But, again, the court instructed that "[a]ny such argument should be previewed with the court outside of the jury's presence." *Ibid*. And, again, Attorney Frederick had not previewed any such potentially permissible use with the court. The court sustained Defendants' objection and directed the jury to disregard the answer insofar as it referenced the Inspector General. Doc. 338 at 43:06-43:11, 43:17-43:19. The same issue came up again shortly thereafter, *id*. at 45:06-45:11; *see id*. at 47:18-47:22, prompting a sidebar during which the court explained to Attorney Frederick what she already must have known, which is that she needed to preview outside the jury's presence arguments concerning evidence subject to a previewing limitation. *Id*. at 46:01-47:17.

With the jury out of the courtroom, the court and the parties discussed various evidentiary issues. *Id*. at 54:12-68:25. As the court explained to Attorney Frederick:

> These discussions all should have happened last week before we were in the middle of trial. The reason they didn't happen last week is because you did not read my motion *in limine* ruling until this weekend, even though … it was entered on September 16th.
>
> So, all of this could have happened in a -- in a non-fire-drill kind of way had you actually read my motion *in limine* order the day or shortly after it was entered.
>
> Instead, you didn't read it until this weekend, and so we're stuck here talking about it during jury breaks and when the jury's in the box. And it's just not a-- it's not an appropriate way to handle this case, and this is not a good use of the jury's time at all.

*Id*. at 69:07-69:19.

Later, Attorney Frederick asked a question that brought Outley into territory forbidden by another of the court's *in limine* rulings:

> Q. Right, so, do you have some health issues, Mr. Outley?
>
> A. I am a diabetic. I have hypertension. I have glaucoma, and I hurt all the time.
>
> Q. All right. So, you're not a physician, so you can't make any diagnosis; but in your opinion, did the environment you were working in have any effect on your health?
>
> A. It did increase my stress level. It increased my tension. And it kept me in prayer. It really shot my blood pressure up.

*Id*. at 117:12-117:20. The court had ruled *in limine* that "Plaintiff may not introduce lay testimony suggesting that his experience at work caused or exacerbated complex medical conditions like high blood pressure or diabetes." Doc. 308 at 5. Defendants again moved for a mistrial. Doc. 338 at 117:21-117:22. The court instructed the jury to disregard testimony about the blood pressure, but that it "may consider the testimony about stress level, tension, and keeping him in prayer." *Id*. at 118:02-118:05.

Outley violated the court's *in limine* rulings on other occasions as well. Although the court had ruled that Outley could not reference Defendants' motions *in limine* in the jury's presence, Doc. 308 at 6, Outley testified that he had been prohibited from addressing certain various topics, thus implicitly referencing the motions *in limine* and the court's *in limine* rulings. Doc. 338 at 112:19-112:22 ("[D]id Mr. Mussen do anything else that made it -- to you that made it harass -- made you feel harassed or made you feel uncomfortable at work? A. Yes, ma'am, but I can't talk about it."); *id*. at 122:01-122:03 ("Mr. Mussen never harassed the white men that worked there. And I can't answer the rest because I'm forbidden to tell you anything about his personal --").

After the jury retired for the day, the court told the parties that it wanted to discuss Defendants' various mistrial motions at 8:45 the following morning. *Id*. at 239:25-240:19, 243:14, 247:23-248:21. Attorney Frederick indicated that she had no intent to cause a mistrial. *Id*. at 250:11-250:13. She described having had an extremely difficult year, *id*. at 251:03-251:08, explaining: "I'm dealing with personal health issues and concentration issues like I've never had. … So, in the midst of all of this, I'm trying to make sure I don't get sick because I've got two kids in college that still need me, *which is why I fought so hard to get the trial continued because I'm just physically, mentally, emotionally not up to it*," *id*. at 251:16-251:24 (emphasis added). Later, the court and Attorney Frederick had this exchange:

> THE COURT: … So, you mentioned -- Ms. Frederick, you said you're not trying to -- you wanted to make sure you didn't get sick, because you have two kids in college, "which is why I fought so hard to get the trial continued, because I'm just physically, mentally, and emotionally not up to it."
>
> Did you ever ask me to continue the trial based on your physical, mental, and emotional state?
>
> MS. FREDERICK: That's been in my – directly, no. That's been in my pleadings when I requested additional time. …
>
> But no, I didn't write a motion that said, "I'm physically, mentally, and emotionally not able to prepare for this trial." No, sir, I didn't because I didn't think that would be well received.
>
> THE COURT: So instead, you argued that I was violating Mr. Outley's due process rights --
>
> MS. FREDERICK: Well --
>
> THE COURT: -- in order to get me to continue the trial?
>
> MS. FREDERICK: That's not entirely true. There is a good faith belief that some of the rulings that this Honorable Court has made have not been correct, which I'm sure doesn't come as a surprise to you. Lawyers think that about judges all the time.
>
> And the counsel that I did obtain that worked with me that's handled hundreds of trials, I was taking cues -- I'm not putting that on her, but I had to get someone who had the experience that I didn't.

And so the information, the case law that I've seen says that some of the rulings are incorrect.

THE COURT: Right. But you went beyond that, saying that.

MS. FREDERICK: Okay. And maybe at a time when I was in a different mindset, I wouldn't have, but this is where I am today.

*Id*. at 253:06-254:18.

The next morning, the court granted Defendants' motion for a mistrial. Doc. 339 at 19:21. The court explained that, cumulatively, Attorney Frederick's violations of the court's *in limine* rulings and references to claims that had been dismissed "add[ed] up to a situation where [it didn't] think that a curative instruction [was] enough." Doc. 339 at 20:10-20:15.

### C. Post-Trial Proceedings

Days after the mistrial, the court ordered Attorney Frederick to show cause why the court should not exercise its inherent authority to dismiss the case with prejudice and why she should not be sanctioned for violating Rule 11(b) and/or referred to the Executive Committee for potential discipline. Doc. 333. The court indicated that, "[a]s part of his filing, Plaintiff may supplement his opposition [324] to Defendants' motion to dismiss for want of prosecution [321]." *Id*. at 1.

On October 12, some two weeks later, Outley (represented by Attorney Frederick) filed a declaratory judgment action against the undersigned judge, the City of Chicago, Mussen, and three attorneys who had represented the City in the present case. *Outley v. Feinerman*, No. 22 C 5583 (N.D. Ill.) (Durkin, J.), ECF No. 1. In Outley's response to the show cause order, he explained: "[T]he Complaint for Declaratory Judgement was not filed the week of the trial, when Plaintiff originally intended to file it, because Plaintiff's attorneys were extremely busy trying to protect Mr. Outley's case and constitutional rights as well as replying to the barrage of filings by

Defendants which were obviously meant to keep Plaintiff's attorneys occupied with those responses instead of the Complaint." Doc. 334 at ¶ 16.

Following Outley's response to the show cause order, Doc. 334, and Defendants' reply in support of their motion to dismiss, Doc. 335, the court held a hearing on October 25, Doc. 336 (no official transcript prepared). Attorney Frederick indicated that she had misread the court's September 29 order and thus had missed the deadline to supplement Outley's opposition to Defendants' motion to dismiss. She made several arguments against dismissal and against her being sanctioned and/or referred for potential discipline. The court will discuss those arguments below. Attorney Frederick also asserted that the court's show cause order "seem[ed] to suggest a bias above and beyond this case" and that there was "something more here than just what went on in this case," but demurred when the court asked her to elaborate on what that "something more" might be.

### Discussion

It bears mention at the outset that "in civil litigation the lawyer's errors are attributed to the client." *Sheikh v. Grant Reg'l Health Ctr.*, 769 F.3d 549, 552 (7th Cir. 2014); *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent."). Thus, Attorney Frederick's conduct is attributed to Outley, although parts of the court's analysis run against Attorney Frederick alone.

## I.     Dismissal with Prejudice

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted).  "[P]ursuant to this power, a court may impose the severe sanction of dismissal with prejudice (or its equivalent, judgment) if the circumstances so warrant." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).  However, "the inherent power of the court is a residual authority, to be exercised sparingly and only when other rules do not provide sufficient basis for sanctions." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006).

Here, Defendants identify two rules to ground their motion to dismiss: Civil Rule 41(b) and Local Rule 16.1.  Doc. 321.  Defendants are right as to Rule 41(b).  And if Rule 41(b) does not justify dismissal, dismissal would be warranted under the court's inherent authority.

### A.     Local Rule 16.1

Local Rule 16.1(1) provides for dismissal in the event of failure "to comply with the substance or the spirit of [the] Standing Order" governing pretrial procedures.  The court has explained on multiple occasions the gravity of Outley's failure to collaborate with Defendants in creating a final pretrial order.  Doc. 303 at 6:16-7:19, Doc. 316 at 14:18-21:24; Doc. 326 at 9-11, 2022 WL 4448739, at *4-5.  However, the court already imposed a proportional sanction for that willful failure by limiting the exhibits Outley could introduce and the witnesses he could call at trial.  Doc. 303 at 7:04-12:06; *see* L.R. 16.1(1) ("Failure of either party to comply with the substance or the spirit of this Standing Order may result in dismissal of the action, default or other sanctions appropriate under Fed. R. Civ. P. 16 or 37, 28 U.S.C. § 1927 or any other applicable provisions."); Doc. 326 at 5-11, 2022 WL 4448739 at *2-5 (explaining the

relationship between Local Rule 16.1, Civil Rule 23(a)(3)(A)(iii), and Civil Rule 37(c)(1)).  The

court does not dismiss this case with prejudice based solely on Outley's failure to comply with

Local Rule 16.1, though that failure provides pertinent context for the events that followed.  *See*

*e360 Insight, Inc. v. Spamhaus*, 658 F.3d 637, 643 (7th Cir. 2011) ("[W]e weigh not only the

straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on

over the course of the lawsuit.").

### B.    Civil Rule 41(b)

Civil Rule 41(b) provides for dismissal "[i]f the plaintiff fails to prosecute or to comply

with [the Federal Rules of Civil Procedure] or a court order."  Fed. R. Civ. P. 41(b).  "A

Rule 41(b) dismissal is appropriate when there is a clear record of delay or contumacious

behavior, or when other sanctions have proved unavailing."  *3 Penny Theater Corp. v. Plitt*

*Theatres, Inc.*, 812 F.2d 337, 339 (7th Cir. 1987) (internal quotation marks omitted).  "A

dismissal with prejudice is a harsh sanction which should usually be employed only in extreme

situations."  *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983).  This case presents

precisely such a situation.

Defendants moved to dismiss for want of prosecution for the second time on the

afternoon before trial.  Doc. 321.  The motion discussed, among other things, Outley's failure to

participate in the pretrial order preparation, attempt to file tardy motions *in limine*, motion for

judicial notice, two stay motions, and motion to renew and for clarification.  On September 23

and 26, Defendants orally renewed their motion to dismiss, citing Attorney Frederick's failure to

read the *in limine* order and her and Outley's repeated violations of the court's *in limine* rulings.

Doc. 337 at 51:05-51:09; Doc. 338 at 57:03-57:11, 63:14-63:21.  Likewise, at the hearing on the

morning of September 27, Defendants explained that they were asking both for a mistrial and for

dismissal under Rule 41(b) "due to plaintiff's continued failure to comply with this Court's

orders." Doc. 339 at 3:19-3:23. Defendants discussed, among other things, Attorney Frederick's claim not to have read the *in limine* order, her reference to the retaliation claim, her reference to the noose photograph, Outley's reference to the OIG reports, Outley's testimony about his high blood pressure, and Outley's statement on the witness stand that he wanted the jury to "hang" Mussen. *Id*. at 3:24-8:12.

The Seventh Circuit has "directed district courts ideally to consider the following factors when entertaining a Rule 41(b) motion: [t]he frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel, the effect of those failures on the judge's calendar and time, the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents." *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931-32 (7th Cir. 2018) (internal quotation marks omitted). "Ultimately," however, "the decision to dismiss depends on all the circumstances of the case." *Id*. at 932 (internal quotation marks omitted).

Some *McMahan* factors weigh against dismissal. There is nothing to indicate that Outley—as opposed to Attorney Frederick—was responsible for the missed deadlines. Some of Outley's claims survived summary judgment, and, as the court observed after the first trial day, it was possible that a reasonable jury could have returned a plaintiff's verdict. Nor would dismissal serve the social objectives of employment discrimination litigation.

That said, the *McMahan* factors do not adequately capture Attorney Frederick's improper and dilatory conduct. They do not expressly account for violations of court orders unrelated to deadlines—violations that, in this case, were committed by both Outley and Attorney Frederick.

Nor do the factors expressly account for Outley's flood of meritless motions in the days leading up to trial or Attorney Frederick's intemperate remarks toward the court. When "all the circumstances of the case" are considered, *McMahan*, 892 F.3d at 932, dismissal is the appropriate course because those circumstances clearly evidence a repeated failure to comply with court orders, Fed. R. Civ. P. 41(b); because they demonstrate "a clear record of delay or contumacious behavior," *3 Penny Theater Corp.*, 812 F.2d at 339 (citation omitted); and because lesser sanctions "proved unavailing," *ibid*.

First, following up on her refusal to collaborate with Defendants to produce a joint final pretrial order, Outley (through Attorney Frederick) failed to comply with court orders by invoking a claim that had not survived summary judgment and repeatedly violating the court's *in limine* rulings in front of the jury. Second, Outley engaged in delay tactics and/or contumacious behavior by: (1) seeking to circumvent the court's pretrial evidentiary rulings with a lengthy and meritless motion for judicial notice, and then (confirming the death of irony) unjustifiably criticizing the amount of time (three days after briefing concluded) it took the court to rule on that motion; (2) moving for an emergency stay pending the resolution of a not-yet-filed lawsuit against the undersigned judge, a lawsuit improperly calculated to secure his recusal; and (3) filing an unfounded motion for an emergency injunction on the day before trial. Those filings not only were frivolous, but also required both Defendants and the court to divert time from other tasks to respond.

It bears mention that those filings also harmed Outley (as a party plaintiff) insofar as they distracted Attorney Frederick from trial preparation. In Attorney Frederick's telling, the fact that she was "inundated with other motions" caused her to miss correspondence from Defendants attaching the declarations that she later argued warranted a continuance. Doc. 337 at

26:14-32:14. Likewise, Attorney Frederick attributed her apparent confusion over whether she had read the court's *in limine* rulings to the fact that there were "so many pleadings going back and forth, so many orders." Doc. 338 at 3:05-4:03; *see* Doc. 334 at ¶ 30 ("With regard to the failure to read the *In Limine* rulings, as stated in open Court, there were so many pleadings going back and forward between the parties, [Attorney Frederick] missed the email and believed it was a ruling we were still waiting for."). A casual observer might think that Attorney Frederick's time would have been better spent preparing for trial than trying to secure its delay. But the casual observer would be wrong because delay was precisely the object of Attorney Frederick's barrage of motions: As she ultimately admitted in a moment of candor and clarity, she "fought so hard to get the trial continued because" she was "just physically, mentally, emotionally not up to [going to trial]." Doc. 338 at 251:22-251:24.

Finally, prior warnings and less drastic sanctions have proved unavailing. On September 20, the court ordered Attorney Frederick to show cause why she should not be sanctioned under Rule 11(b) in connection with Outley's first stay motion. Doc. 315. That admonition did not deter her from filing Outley's second stay motion (styled an emergency injunction motion) or his motion for clarification. In fact, she doubled down, writing in the second stay motion:

> HONORABLE JUDGE FEINERMAN HAVING NO DIRECT KNOWLEDGE OF THE CONTENTS OF THE COMPLAINT [for declaratory judgment], embraced [defense counsel's] argument wholeheartedly, engaged in a long explanation of why the sanctions he ordered against Plaintiff on September 7, 2022, were justified, he himself indulged in personal attacks against Mr. Outley's counsel of record, he ordered Mr. Outley's counsel of record TO SHOW CAUSE why she should not be sanctioned under Rule 11 for *frivolous filings*, *of which he had no evidence of*, he refused to grant the Stay, refused to disqualify himself and even after the undersigned fully briefed Honorable Judge Feinerman of the nature of Mr. Outley's claims in the forthcoming Declaratory Judgement action – which is not what everybody baselessly assumed - he is forcing

> Mr. Outley to go to trial with a case that he has gutted and crippled <u>with</u>
> <u>rulings which are in direct conflict with the established principles of law.</u>

Doc. 317 at ¶ 8. (The court later vacated as moot the first show cause order in light of its

September 29 show cause order. Doc. 333.) As noted, the court imposed sanctions short of

dismissal on several occasions, including by limiting Outley's evidence and witnesses at trial and

by terminating Attorney Frederick's opening statement when it became clear that she could not

or would not stay within the confines of the court's *in limine* rulings. The court repeatedly

admonished Attorney Frederick and sought to address her repeated missteps with curative

instructions. And yet her unacceptable conduct continued.

The mistrial came after the expenditure of significant resources by Defendants, the court,

court staff, and prospective and seated jurors. Outley's conduct leading up to and during trial

leaves the court unable to justify imposing the costs of a retrial on Defendants, the court and its

staff, and a second venire.

Outley's arguments against dismissal are meritless. He contends that "what [he] and his

attorneys have done, quietly and respectfully, has been mercilessly mischaracterized and used

against them." Doc. 334 at ¶ 32. That is incorrect; the pertinent filings and transcripts show that

the court's characterizations of Outley's and Attorney Frederick's misconduct are accurate.

Outley also contends that his stay motions and motion for judicial notice were not frivolous. *Id.*

at ¶¶ 4-8, 28, 31. To the contrary, for the reasons the court expressed in denying them, those

motions were meritless and contumacious, designed to secure a continuance in order to buy

Attorney Frederick more time because, as she admitted, she was unprepared for trial.

Outley next observes that Defendants, too, sought continuances and extensions. *Id.* at

¶ 21. That observation is correct, but it does not yield the conclusion Outley seeks. The court is

not sanctioning Outley for seeking extensions of time. The court granted many of Outley's

extension requests. Docs. 33, 40, 54, 97, 143, 251, 276, 285. On one occasion, the court permitted Outley to file a reply brief over a month after it was due and after Attorney Frederick failed to appear for a hearing on the motion. Docs. 269, 274, 276. (This incident refutes Outley's assertion at the October 25 hearing that "[t]he failure to comply with deadlines only happened in the last month leading up to trial.") Even as trial—which in February 2022 was set for September 2022—approached, the court granted Outley an extension of time to file motions *in limine*. Doc. 285. As the court explained, Outley's motion to file *instanter* twenty motions *in limine* was not merely "late"—it came four weeks after the deadline, after Attorney Frederick had represented to Defendants that Outley would not be filing such motions, and three business days before the final pretrial conference. Doc. 308 at 1. As for Outley's late and unilaterally filed pretrial order, the court explained: "[I]t was six hours late, which isn't a big deal. What's really important is that there was no conferring [as required by the local rules]." Doc. 303 at 8:23-8:25. The timing of Outley's motion for judicial notice and two stay motions was completely inappropriate because the perceived need for the emergency relief sought by those motions arose from Attorney Frederick's earlier and severe dereliction of her trial preparation obligations.

Outley next argues that "if counsel was not fully aware of the *in limine* rulings, then she didn't know she was violating the court's rulings, in opening statement and on direct examination, and certainly was not doing it intentionally." Doc. 334 at ¶ 30. This argument is multiply flawed. First, "willfulness is not required: a dismissal under Rule 41(b) is permissible when there is a clear record of delay *or* contumacious conduct, *or* when other less drastic sanctions have proven unavailing." *Jones v. M/A Mgmt Corp.*, 773 F. App'x 844, 847 (7th Cir. 2019) (internal quotation marks omitted). Second, before the court told Attorney Frederick that

it had issued an *in limine* ruling, she claimed to have been operating under the assumption that the court had granted all of Defendants' motions *in limine* "in block." Doc. 317 at ¶¶ 30, 32; Doc. 319 at ¶¶ 6, 11. Under that (mistaken) view, Attorney Frederick should have refrained from mentioning in her opening statement *any* evidence Defendants had sought to exclude, particularly because she knew that the court had denied Outley's motion for judicial notice. Finally, before commencing Outley's direct examination, Attorney Frederick represented to the court that she had familiarized herself with the *in limine* rulings over the weekend. Doc. 338 at 4:04-4:06. She later represented that she had reviewed those rulings with Outley as well. *Id*. at 249:03-249:16. And yet both her questions and Outley's answers violated those rulings.

Likewise unpersuasive is Attorney Frederick's explanation that she failed to collaborate with Defendants on the joint pretrial order in part because "she simply didn't know what to do." Doc. 334 at ¶ 27. Again, willfulness is not required. Moreover, the undersigned judge's web page includes a standing order about final pretrial orders; Local Rule 16.1(6) details the process of creating a final pretrial order; and Form Local Rule 16.1.1 provides a template for such orders. And, incidentally, Attorney Frederick was among counsel in a case decades ago in which the Seventh Circuit affirmed the district court's "dismiss[al of] the plaintiffs' suit as a sanction for noncompliance with court rules and orders" where counsel's missteps included various problems with the pretrial order preparation process. *See Anderson v. UPS*, 915 F.2d 313 (7th Cir. 1990).

Outley also argues that Defendants had engaged in improper conduct by sending Attorney Frederick declarations after discovery had closed and by referring to a glycol spill at the Lexington Pumping Station in their opening statement. Doc. 336. As to the first issue, the court asked Defendants why they had created the declarations so close to trial, but explained that no discovery violations had occurred because Defendants produced the declarations to Outley as

28

soon as they were created and that Outley was not prejudiced because the declarations provided a preview of the declarants' testimony—a preview that Outley had not otherwise obtained by deposing the declarants during discovery. Doc. 337 at 37:15-42:04, 44:12-44:20. As the court explained, Outley also did not timely bring the issue to the court's attention. *Id*. at 40:15-44:20.

As to Defendants' invocation of the glycol spill in their opening statement, Outley is wrong to assert that the spill was "off the table." Defendants did not explicitly seek to exclude evidence about the glycol spill in their motions *in limine*. Doc. 286. One of Outley's untimely motions *in limine* did affirmatively "seek[] admission of the discovery material and witness testimonies related to the spillage." Doc. 294-1 at ¶ 17. And a "composite exhibit" of discovery material related to the spill appeared on Outley's exhibit list in his untimely, unilateral pretrial order. Doc. 295 at 8. The court's ruling that Outley would be limited at trial to the exhibits included in Defendants' pretrial order and those referenced in Defendants' motions *in limine* thus meant that Outley would be unable to introduce documentary evidence about the glycol spill. However, that ruling did not prohibit Outley or any other witness from testifying about the incident. And in its opinion denying Outley's motion for judicial notice, the court noted that "Mussen's alleged exclusion of Plaintiff from [a meeting ostensibly related to the glycol spill] might be relevant to Plaintiff's hostile work environment claim" even though the particular document for which Outley sought judicial notice had been excluded. Doc. 326 at 17, 2022 WL 4448739, at *8.

All this is to say that the court had not taken the glycol spill "off the table" before trial. Moreover, when Outley objected to Defendants' invocation of the incident in their opening statement, he did not argue that the topic was off-limits or irrelevant—rather, when the court asked the basis of the objection, Attorney Frederick said: "It's false information." Doc. 337 at

59:02-59:20.  The court overruled that objection, explaining that it was "not weighing in on the factual dispute" and that the jury would decide what the evidence showed.  *Id*. at 59:21-60:05. To the extent Outley takes issue with defense counsel's objections to questions about the glycol spill during Mussen's deposition, the court explained that those objections were likely improper, but that the issue should have been timely raised with the magistrate judge after the deposition and, if needed, with the district judge.  Doc. 338 at 16:05-16:15, 135:09-135:22.  In any event, improper objections during a deposition are hardly equivalent to Outley's pervasive misconduct in the lead up to and during trial.

Outley also points to several statements by the court during trial.  Doc. 336.  He argues that the court's *in limine* rulings were "[v]ery confusing" and that "[e]ven th[e] Court admitted … he couldn't remember exactly what his ruling was on each of defendants' motions *in limine*."  *Id*.  Here is the statement to which Outley refers:

> [Outley] objects to the Court's order to grant the defendants' motions *in limine*, and in particular 5, 6, 8, and 9.  I'm going to deny that motion, but I'll also note that my rulings on those motions are set forth in docket 308. And I can't remember exactly what I did with each of those; but some of them were granted, some of them were granted in part and denied in part, and some of them were granted, but with a qualification that if the plaintiff were to make a particular showing or argument at trial outside the presence of the jury, then those exhibits might be admissible for some permissible purpose.

Doc. 337 at 4:16-5:01.  Needless to say, this statement does not indicate that the court's rulings were incomprehensibly confusing, let alone that Attorney Frederick could not have been expected to read and understand the court's pretrial rulings before trial.

At the most recent hearing, Doc. 336, Outley asserted that the court had said something to Defendants regarding the above-referenced declarations along the lines of: "[A]re you trying to give [Attorney Frederick] a reason to win on appeal"?  Outley added that it "seems … that a decision had already been reached that plaintiff and [Attorney Frederick] were going to lose."

That is incorrect. Defendants' liability was a question for the jury, not the judge, and the court warned Attorney Frederick after the first trial day that she was badly mishandling a potentially winning case.

Putting that aside, the statement that Outley attributes to the court does not appear in the court's colloquy with the parties over the declarations. Doc. 337 at 21:06-44:22. Perhaps Outley was thinking of an exchange over whether he would be able to call Edward Walsh as part of his affirmative case. Defendants objected because they—and not Outley—had subpoenaed Walsh. *Id*. at 66:02-66:13. The court inquired: "What difference does that make? Do you really want to create an appeal issue over who issued the subpoena?" *Id*. at 66:14-66:16. Shortly thereafter, when Defendants suggested that perhaps Outley could call Walsh but engage in cross-examination-style questions only upon showing hostility, the court inquired: "Again, do you want to die on that hill? I mean, what difference does that make?" *Id*. at 67:02-67:07. The court ultimately indicated that Outley could call Walsh and that everyone would "see how it plays out." *Id*. at 67:22-67:25. The court's questions do not suggest that the outcome of the case was predetermined—rather, they indicate that the court was chiding Defendants for creating and then fighting inconsequential battles.

Finally, Outley is wrong that dismissal with prejudice is unwarranted because he has already been "severely punished" for "each infraction made by the plaintiff or his counsel … in the last two months dealing with this trial." As the court has explained, lesser sanctions proved insufficient to ensure an orderly and fair trial. And if Outley were permitted to re-try his case, he would have effectively secured the continuance that Attorney Frederick desired and impermissibly sought to force with her barrage of meritless and intemperate motions in the lead-up to trial.

### C.     The Court's Inherent Authority

In the alternative to dismissal with prejudice under Rule 41(b), the court dismisses this case with prejudice under its inherent authority.  The court's inherent authority "is particularly broad where … bad faith conduct occurs within the presence of the court (thus making fact-finding unnecessary) and where the court uses the sanction to maintain the integrity of the trial process." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (internal quotation marks omitted).  "A district court may impose sanctions under its inherent authority where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Ibid.* (internal quotation marks omitted).  "The court must first make a finding of bad faith, designed to obstruct the judicial process, or a violation of a court order." *Ibid.* (internal quotation marks omitted).  "Mere clumsy lawyering is not enough." *Id.* at 464.  But "[b]ad faith can be recklessly making a frivolous claim." *Egan v. Pineda*, 808 F.3d 1180, 1180 (7th Cir. 2015) (internal quotation marks omitted); *see also Egan v. Huntington Copper Moody & Maguire, Inc.*, 2015 WL 1631547, at *5 (N.D. Ill. Apr. 10, 2015) ("'Bad faith' or 'vexatious' conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct can suffice."), *aff'd sub nom. Egan v. Pineda*, 808 F.3d 1180 (7th Cir. 2015).  And, as relevant here, the Seventh Circuit has recognized that "[m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court," and that "there are species of misconduct that place too high a burden on limited judicial resources for a court to allow a case to continue." *Barnhill*, 11 F.3d at 1368 (footnote omitted).

Here, dismissal with prejudice is necessary to "maintain the integrity of the trial process." *Id*. at 463 (internal quotation marks omitted).  As explained, Attorney Frederick's repeated violations of the court's rulings went beyond clumsy lawyering, and she acted in bad faith by "recklessly making … frivolous [arguments]," *Egan*, 808 F.3d at 1180, in Outley's two stay motions and his motion to renew and for clarification.  Docs. 309, 317, 319.  As explained in greater detail below, those motions rested on premises unsupported by law and fact, including that a forthcoming declaratory judgment suit by Outley would force the undersigned judge's recusal and that the court had ignored one of Outley's timely filings and ruled wholesale for Defendants on their motions *in limine*.  Doc. 316 at 5:25-31:08 (denying Outley's first stay motion); Doc. 337 at 3:18-6:02 (denying Outley's motion to renew and for clarification); *id*. at 12:07-16:12 (denying Outley's second stay motion).

Moreover, the Seventh Circuit has explained that when a district court imposes sanctions under its inherent authority, it is "entitled to examine, as one factor in its consideration, the modus operandi of the attorney as evidenced by her prior disciplinary history." *Fuery*, 900 F.3d at 467.  Attorney Frederick has a history of discipline, bringing frivolous claims, and failing to meet deadlines.  Last year, District Judge Ellis dismissed with prejudice a case brought by Attorney Frederick as counsel, explaining that there was "a clear record of both delay and contumacious conduct by Frederick[] and less drastic sanctions would be ineffective." *Mallory v. Rush Univ. Med. Ctr.*, 2021 WL 458547, at *21 (N.D. Ill. Feb. 9, 2021), *appeal dismissed*, 2021 WL 7541199 (7th Cir. Nov. 16, 2021) (dismissing appeal for lack of prosecution).  District Judge Pallmeyer has awarded Rule 11 sanctions against Attorney Frederick (who was representing herself) because (1) the amended complaint "included several factual contentions that were baseless at the time they were made"; (2) the amended complaint included "false" and

"objectively misleading" allegations; (3) the amended complaint included a claim supported by allegations that did "not come close to clearing the nonfrivolous bar"; and (4) the "lawsuit was presented for the improper purpose of causing unnecessary delay and needlessly increasing the cost of litigation." *Frederick v. Easty*, 2015 WL 603884, at \*9-10 (N.D. Ill. Feb. 11, 2015). The Seventh Circuit has concluded on at least two occasions that Attorney Frederick advanced frivolous claims. *Abatangelo v. Wells Fargo Bank, N.A.*, 719 F. App'x 520, 524 (7th Cir. 2017) ("*Rooker-Feldman* to one side, we cannot resist adding that underneath all of this is an obviously frivolous complaint."); *Frederick v. Marquette Nat'l Bank*, 911 F.2d 1, 2 (7th Cir. 1990) ("The district court was right to dismiss the suit, but the dismissal should have been based on frivolousness."). Attorney Frederick's inability or unwillingness to meet deadlines regularly draws adverse mention. *See Mallory*, 2021 WL 458547, at \*2 ("As the litigation progressed, [Attorney Frederick] continued to show an inability to meet the deadlines set by the judges overseeing the case, and she regularly sought last-minute extensions when she ran up against these deadlines."); *Edwards v. Avalon Indus., Inc.*, No. 18 C 3563 (N.D. Ill.) (Pacold, J.), ECF No. 41 ("The court's May 15, 2020 order … directed [Attorney Frederick] to file a notice of service / status report by May 29, 2020. No report having been filed, the court's June 8, 2020 order … again directed [Attorney Frederick] to file the notice of service / status report by June 22, 2020 and noted that if no status report was filed, the case would be dismissed for want of prosecution. No status report was filed. Accordingly, the case is dismissed for want of prosecution."); *Liner v. FCA US LLC*, 333 F.R.D. 122, 124 (N.D. Ill. 2019) (Cole, M.J.) ("Had [Attorney Frederick] proceeded apace when she had the opportunities, she may have avoided brushing up against the close of discovery – twice – with little to show for it. The Seventh Circuit has warned, time and again, that attorneys who wait until the last minute to handle their

business are playing with fire.") (internal quotation marks omitted); *Frederick v. Select Portfolio*, 2011 WL 1444075, at *3 (N.D. Ill. Jan. 14, 2011) (Manning, J.) ("As a sanction for delaying the deposition of her mother (whom Frederick purported to represent) and for failing to direct her mother to answer questions forthrightly, the assigned magistrate judge [Valdez, M.J.] barred Frederick from presenting any evidence in support of Count III."). And this past month, the Appellate Court of Illinois dismissed an appeal for want of prosecution due to Attorney Frederick's failure to file a request for preparation of the record, though it later vacated the dismissal. *See Schmidt v. Arteaga*, No. 1-22-1008 (Ill. App. Nov. 29, 2022 & Dec. 27, 2022).[*]

In light of Attorney Frederick's history, her "unwillingness to conform her conduct to requirements laid down by judicial orders or rules of procedure is unlikely to change unless courts respond firmly." *Rojas v. Town of Cicero*, 775 F.3d 906, 910 (7th Cir. 2015). Dismissal with prejudice is a proportionate sanction given both the facts of the present case and Attorney Frederick's history of comparably substandard conduct.

Moreover, Attorney Frederick's conduct in this case has "exhibit[ed] such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and

---

[*] In her motion to vacate that dismissal, Attorney Frederick maintained—echoing some of the excuses she asserted in the present case for not reading the court's *in limine* rulings and not bringing Defendants' declarations to the court's attention—that she "did not see" the opposing party's motion to dismiss for want of prosecution "until the day [the state appellate court] entered the Dismissal," fourteen days after the motion to dismiss was filed. Defendant-Appellant's Motion to Vacate the Dismissal for Want of Prosecution at ¶¶ 2, 8, *Schmidt v. Arteaga*, No. 1-22-1008 (Ill. App. Dec. 12, 2022). Attorney Frederick added, with a coda that confuses temporal proximity with causation: "Since mid-August Defendant's counsel has been inundated with a bitter federal court battle, including pre-trial preparation, trial, post-trial activities, including the preparation of an 87-page Complaint for Declaratory Judgment which recently resulted in the resignation of said District Court Judge." *Id.* at ¶ 9.

credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill*, 11 F.3d at 1368 (footnote omitted); *see also id.* at 1368 n.9 ("[T]hat a party suffers the consequences for its counsel's misconduct is part and parcel of our system of representative litigation."). In addition to her intentional disregard for the court's pretrial procedures for preparing a final pretrial order, Attorney Frederick repeatedly transgressed the bounds of appropriate zealous advocacy in addressing the court. Remarkably, Attorney Frederick maintains that "she is unsure of which comments this Court deemed disrespectful," Doc. 334 at ¶ 29, and that she does not "know how you can disagree with a judge without it being deemed disrespectful," Doc. 336. To name just a few examples, it is not appropriate advocacy to speak of "get[ing] ripped a new butthole," Doc. 303 at 30:01-30:13; *see also* 32:02-32:09; to say that one is "appalled" by the court's "suggest[ion] that there's something that they need to review as to whether they're going to take judicial notice of [a specific] case," Doc. 316 at 33:19-33:21; or to accuse the court of "follow[ing an] 'alternative speculative realty [sic],'" Doc. 317 at ¶ 41.

In view of all the circumstances of this case, dismissal with prejudice is the most appropriate—in fact, the only appropriate—exercise of the court's inherent authority in the event dismissal with prejudice were not justified under Rule 41(b).

## II.    Rule 11 Sanctions

The court also ordered Attorney Frederick to show cause why she should not be sanctioned under Rule 11(b). The Rule provides in relevant part:

> … By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Whether a filing was presented for an improper purpose is a subjective inquiry. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 583 (7th Cir. 2019) (citing *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (en banc), as "recognizing that Rule 11 embodies both an objective and a subjective standard, prohibiting both 'frivolousness on the objective side' and 'bad faith on the subjective side'") (quoting *Mars Steel*, 880 F.2d at 930). When evaluating whether a filing is adequately grounded in fact and/or supported by existing law or a nonfrivolous argument for changing or augmenting existing law, "[t]he court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Off. & Pro. Emps. Int'l Union, Loc. 39*, 443 F.3d 556, 560 (7th Cir. 2006) (internal quotation marks omitted).

Attorney Frederick's conduct in this case ran afoul of Rule 11. By admitting that she "fought so hard to get the trial continued because [she was] just physically, mentally, emotionally not up to it," Attorney Frederick revealed that she launched a barrage of motions in the run-up to trial for the improper purpose of obtaining a continuance on false pretenses. Moreover, the following assertions by Attorney Frederick were unsupported by fact:

- "Honorable Judge Feinerman <u>never</u> addressed Mr. Outley's *timely* response [to Defendants' motions *in limine*] – which could not be included in the 'sanction

package' because they were timely - and admitted in block Defendants' MILs."
Doc. 317 at ¶ 30.

- "Honorable Judge Feinerman[] did not explain why he never took Mr. Outley's timely Response to Defendants' MILs under consideration. He ruled straight for the granting of Defendants' MILs., in block, without ever mentioning Mr. Outley's Response." *Id.* at ¶ 32.

- "[T]he Court never translated its thinking [on Defendants' Motion *in limine* No. 13] into a ruling, *instead* with one swift move the Court later issued a ruling granting Defendants' MILs <u>in block</u> effectively overruling its prior thinking." Doc. 319 at ¶ 6.

- "[T]he Court cherry picked [Defendants' motions *in limine*] no. 4, 7, and 13, for discussion, started a discussion on them but did not rule on anything and then, again – in a swift move – issued an order granting Defendants' MILs in block." *Id.* at ¶ 11.

As explained, the court's *in limine* order expressly addressed Outley's timely response to Defendants' motions *in limine* and did not grant Defendants' motions "in block." Doc. 308. Yet Attorney Frederick made those assertions to the court nearly a week after the court issued its *in limine* order, and after a hearing in which the court repeatedly referenced that order, Docs. 315, 316, and after she attached the court's order as an exhibit to a motion that made false statements about the court's handling of Defendants' motions *in limine*. Doc. 317-39. Such conduct is sanctionable under Rule 11(b).

Moreover, the following arguments were not supported by existing law or by a nonfrivolous argument for modifying or augmenting existing law:

- "Here, aside from the legal standard and [stay] analysis, the very basic consideration is that the Honorable Judge Feinerman is named as Defendant in the Declaratory Judgement action, as soon as the motion is filed he will become a directly adverse party to Mr. Outley, and that creates a conflict that precludes Your Honor from taking any further action in the instant action, besides this stay." Doc. 309 at 3.

- "When ruling on the parties['] pretrial MILs, the Court is required - by law and customs to put the parties' MILs- in this case Defendants' MILs and Plaintiff's Response to Defendants' MILs – side by side and in the presence of the parties, go through the Motions, one by one stating on the record 'no 1 admitted/denied' 'no. 2 admitted/denied' and so on and so forth." Doc. 319 at ¶ 8.

The first statement neither addressed relevant adverse precedent nor explained why a different result should obtain in this case. *See In re Taylor*, 417 F.3d at 652; *Sullivan*, 157 F.3d at 1096; *Agrawal*, 2008 WL 4449862, at \*2. The second statement is unsupported by any authority and is flatly incorrect; it is a common and acceptable practice for courts to rule on motions *in limine* in a written order.

In sum, Rule 11 sanctions are appropriate given Attorney Frederick's improper purpose in twice moving for a stay and given her representations and arguments ungrounded in fact or law. As a sanction, the court publicly reprimands Attorney Frederick for that improper conduct. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives.").

## III.    Referral to the Executive Committee for Potential Discipline

The court also ordered Attorney Frederick to show cause why she should not be referred to the Executive Committee for potential discipline. Doc. 333. Such a referral is warranted given her many derelictions of duty in handling this case.

Attorney Frederick offered various explanations for her conduct, including health and family issues and lack of familiarity with the trial process (having never taken a case to trial). *E.g.*, Doc. 294 at ¶¶ 2-6; Doc. 303 at 51:02-51:03; Doc. 334 at ¶¶ 23, 27; Doc. 338 at 251:03-251:25. Attorney Frederick has cited similar excuses for her conduct in other cases. *See Mallory*, 2021 WL 458547, at \*18 ("*Liner* is especially relevant because in that case, Frederick offered many of the same justifications for [her] inability [to meet deadlines]—various medical issues, heavy workload as a solo practitioner, and seeing her daughters off to college—as she has in this litigation."); *Liner*, 333 F.R.D. at 125-27 (noting Attorney Frederick's invocation of various medical issues, a heavy workload as a solo practitioner, and her daughters' recent

39

departure for college). Making matters worse, Attorney Frederick has demonstrated a penchant of baselessly accusing judges in this District of bias when things do not go her way. *E.g.*, *Mallory*, 2021 WL 458547, at *6-7 (detailing Attorney Frederick's accusations that Magistrate Judge Kim's rulings resulted from racial bias against her and her client); *Kuczaty v. Willowbrook Ford, Inc.*, No. 21 C 2551 (N.D. Ill.) (Ellis, J.), ECF No. 57 at ¶ 31 (in a motion to recuse filed by Attorney Frederick, suggesting that District Judge Ellis used the term "mulligan" as an "ethnic slur" and that her use of the term reflected "bias" against Attorney Frederick).

The court does not doubt that Attorney Frederick, like many attorneys, has experienced difficult personal circumstances. However, like all attorneys, Attorney Frederick has a duty to provide competent and diligent representation to her clients. *See* Local Rule 83.50 ("Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct, a lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct, as adopted by the Illinois Supreme Court."); ABA Model Rule of Professional Conduct 1.1, Comment 5 ("Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation."); Illinois Rule of Professional Conduct 1.1 Comment 5 (same); ABA Model Rule of Professional Conduct 1.3, Comment 2 ("A lawyer's work load must be controlled so that each matter can be handled competently."); Illinois Rule of Professional Conduct 1.3, Comment 2 (same). Nor does Attorney Frederick's status as a sole practitioner absolve her of those responsibilities. *See Harrington v. City of Chicago*, 433 F.3d 542, 548-49 (7th Cir. 2006) ("Sole practitioner or not, Boyd, as a member of the bar, had duties to his clients, to opposing

counsel, and to the district court.").  Attorney Frederick also has a professional responsibility not to "assert or controvert an issue … unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."  ABA Model Rule of Professional Conduct 3.1; Illinois Rule of Professional Conduct 3.1 (substantively same).  Particularly given Attorney Frederick's history of substandard representation and flouting of court orders, in this case and many others, referral is appropriate so that the Executive Committee can consider whether she violated her professional responsibilities in a manner that warrants discipline, including suspension or removal from the bar of this court.

Attorney Frederick argues that if she is removed or suspended from this court's bar, she will be effectively driven out of business, to the detriment of clients.  As a threshold matter, a referral for discipline does not guarantee that discipline will be imposed.  More fundamentally, many clients have been harmed by Attorney Frederick's deficient representation in this and other cases and, if past is prologue, other clients will be so harmed in the future if she is allowed to continue practicing in this District.  Attorney Frederick has regularly proved herself to be a detriment to her clients—including here, where she has caused Outley to lose the opportunity to present a potentially winning case to a jury.  It is well past time to take appropriate action.

## Conclusion

This case is dismissed with prejudice.  Attorney Frederick is publicly reprimanded for her improper conduct in this case, and she is referred to the Executive Committee for potential discipline.

December 30, 2022

_____
United States District Judge